IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

LARRY D. THOMPSON,

                      Plaintiff,                          CV-09-1082-ST

      v.                                                FINDINGS AND
                                                          RECOMMENDATION
MICHAEL J. ASTRUE, Commissioner of Social
Security,

                      Defendant.

STEWART, Magistrate Judge:

## INTRODUCTION

Plaintiff, Larry Thompson, brings this action for judicial review of a final decision of the Commissioner of Social Security denying his applications for disability insurance benefits ("DIB") and supplemental security income payments ("SSI") under Titles II and XVI of the

1 - FINDINGS AND RECOMMENDATION

Social Security Act.  This court has jurisdiction under 42 USC §§ 405(g) and 1383(c)(3).  For the reasons set forth below, the Commissioner's decision should be affirmed.

## BACKGROUND

Thompson was 58 years old at the time of the alleged onset of disability on January 18, 2003.  Tr. 69.[1]  He has a high school education and worked as a truck dispatcher for almost 18 years.  Tr. 114, 512.  He alleges disability due to severe spinal stenosis, degenerative disc disease, diabetes, diffuse peripheral neuropathy, anxiety, and depression.  Tr. 79, 497.  Thompson's social security applications were denied initially and on reconsideration.  Tr. 46, 53.  A hearing was held before an Administrative Law Judge ("ALJ") on October 5, 2006.  Tr. 505-42.  The ALJ determined Thompson satisfied the insured status requirements for a claim under Title II through June 30, 2008.  Tr. 38.  Therefore, Thompson must establish that he was disabled on or before that date to prevail on his DIB claim.  42 USC § 423(a)(1)(A); *Tidwell v. Apfel,* 161 F3d 599, 601 (9th Cir 1998).  The ALJ issued an opinion on May 11, 2007, finding Thompson not disabled.  Tr. 33-43.  The Appeals Council denied review (Tr. 6), making the ALJ's decision the final decision of the Commissioner.

## DISABILITY ANALYSIS

The initial burden of proof rests upon the claimant to establish disability.  *Roberts v. Shalala*, 66 F3d 179, 182 (9th Cir 1995).  To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months."  42 USC §§ 423(d)(1)(A), and 1382c(a)(3)(A).

---

[1] "Tr." refers to the Transcript of Social Security Administrative Record filed on March 19, 2010 (docket #13).

2 - FINDINGS AND RECOMMENDATION

The Commissioner has established a sequential process of up to five steps for determining whether a person over the age of 18 is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 US 137, 140 (1987); 20 CFR §§ 404.1520, 416.920. At step one, the ALJ determines if the claimant is performing substantial gainful activity. If he is, then the claimant is not disabled. 20 CFR §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the ALJ determines if the claimant has a "severe medically determinable physical or mental impairment" that meets the twelve month duration requirement. 20 CFR §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have such a severe impairment, then he is not disabled. *Id.* At step three, the ALJ determines whether a severe impairment meets or equals a "listed" impairment found in the regulations. 20 CFR §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's severe impairment meets or equals a listed impairment, then he is disabled. 20 CFR §§ 404.1520(d), 416.920(d).

If the adjudication proceeds beyond step three, the Commissioner must assess the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of the sustained work-related activities the claimant can still do on a regular and continuing basis, despite the limitations imposed by his impairments. 20 CFR §§ 404.1545, 416.945; Social Security Ruling (SSR) 96-8p.

At step four, the Commissioner must determine whether the claimant retains the RFC to perform work he has done in the past. If the ALJ determines that he retains the ability to perform his past work, then the Commissioner will find the claimant not disabled. 20 CFR §§ 404.1520(f), 416.920(f).

///

**THE ALJ's FINDINGS**

At step one, the ALJ found that Thompson had not engaged in substantial gainful activity since the alleged onset of disability. Tr. 35. At step two, the ALJ found that Thompson had severe impairments of peripheral neuropathy, degenerative disc disease with chronic low back pain, and obesity. *Id.* He determined at step three that Thompson's impairments did not meet or equal the criteria for a listed impairment enumerated in 20 CFR Pt. 404, subpt. P, appendix 1 ("Listing of Impairments"). Tr. 37. Assessing Thompson's RFC, the ALJ found he was able to perform a modified range of sedentary work activity. Tr. 38. Thompson's RFC is sedentary work with standing and walking up to two hours in an eight hour day, and sitting for six hours in an eight hour day with the ability to change positions every hour. *Id*. In addition, his ability to push and pull is commensurate with his ability to lift. *Id*. Thompson is also limited to only occasional climbing, stooping, kneeling, crouching, or crawling. *Id.*

The ALJ elicited testimony from an impartial vocational expert ("VE"). Tr. 539-40. The ALJ asked the VE whether a person with Thompson's age, education, experience, and RFC was capable of performing Thompson's past relevant work as a truck dispatcher. Tr. 540. The VE replied that he could. *Id.* Thus, the ALJ found Thompson could perform his past relevant work and was not disabled within the meaning of the Social Security Act. Tr. 42-43.

**STANDARD OF REVIEW**

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 USC § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F3d 1190, 1193 (9th Cir 2004). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."
*Andrews v. Shalala*, 53 F3d 1035, 1039 (9th Cir 1995) (citations omitted).

The ALJ is responsible for resolving conflicts in the medical evidence and determining credibility. *Edlund v. Massanari,* 253 F3d 1152, 1156 (9th Cir 2001). If the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, the court may not substitute its judgment for that of the Commissioner. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F3d 595, 599 (9th Cir 1999).

## FINDINGS

Thompson alleges the ALJ erred by: (1) failing to find his anxiety and depression were severe impairments; (2) determining his RFC by improperly rejecting the opinion of his physicians regarding the limitations of his impairments; and (3) rejecting lay witness testimony. Based on these errors, Thompson argues that the ALJ improperly concluded at step four that he could perform his past relevant work.

I.      **Medical Background**

Thompson suffered an injury at work in 1983 that was suggestive of a herniated disc. Tr. 151-264. He was treated with a chymopapain injection for dissolution of the disc. Tr. 427. Although initially successful in eliminating pain, he incurred a staphylococcus infection and received weeks of therapy. *Id.*

In June 2003, Thompson was treated by his primary care physician at Kaiser Permanente, Glenn A. Greeder, M.D., for right foot pain and referred to counseling for depression. Tr. 376-78. David Charlton, LCSW, evaluated Thompson on July 8, 2003. Tr. 371-74. Thompson stated he always had depression, but it was much worse since a layoff from work, and that he was separated from his wife and living with his son, which was strained. Tr. 371. He also

5 - FINDINGS AND RECOMMENDATION

reported successful treatment for anxiety and panic attacks with medication.  Tr. 372.  Charlton noted Thompson was alert, oriented, had a good memory and good concentration, and diagnosed dysthymia, and adjustment disorder due to unemployment.  Tr. 373.  Dr. Greeder prescribed Paxil.  Tr. 367-68.

An x-ray of Thompson's back on November 26, 2003, showed severe degenerative disc disease at L5-SI with mild degenerative disc disease from L1through L4-5 and moderate to severe degenerative facet disease at L4-5-SI.  Tr. 270.

Malina Neville, M.D., a state agency consultant, examined Thompson on December 2, 2003.  Tr. 265-69.  She determined that he could stand and walk about two hours with limitations, sit less than six hours, lift 20 pounds occasionally and 10 pounds frequently.  Tr. 268.  She also found postural limits of bending, stooping, and crouching only occasionally, limitations on reaching, handling, feeling, grasping and fingering secondary to decreased sensation in the fingers, and limited range of motion in the shoulders.  Tr.  269.

Gregory A. Cole, Ph.D., a state agency consultant, completed a psychodiagnostic evaluation on March 4, 2004.  Tr. 271-77.  Thompson stated he was laid off work because of lack of business, but complained he could not work because of problems concentrating due to pain.  Tr. 272-73.  Dr. Cole diagnosed depression, panic disorder without agoraphobia, and pain disorder.  Tr. 275.  He found only mild problems in the areas of attention, concentration, memory, persistence and pace, and noted that Thompson was able to complete simple routine tasks and had no problems completing a simple multiple step task.  *Id.*  He gave Thompson a Global Assessment of Functioning ("GAF") of 55.[2]  *Id.*  He also noted that Thompson was

---

[2] The GAF is a scale from 1-100, in ten point increments, that is used by clinicians to determine the individual's current overall functioning. A GAF of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-

6 - FINDINGS AND RECOMMENDATION

capable of handling funds and concluded that the exam was not consistent with Thompson's view that he was unable to work at all. Tr. 276.

On March 23, 2004, Linda Jensen, M.D., a state agency consultant, reviewed the medical records to determine Thompson's limitations. Tr. 278-83. After attempting clarification with Dr. Neville, she determined that Thompson could frequently lift less than 10 ten pounds, stand or walk for at least two hours, sit six hours with alternate sitting and standing every hour, only occasionally climb, kneel, crouch or crawl. Tr. 279-80, 282. She further found that manipulative limits were not necessary based on a lack of reports of finger or shoulder limits or pain. Tr. 280. Her report was confirmed by Richard Alley, M.D. Tr. 283, 493.

On March 30, 2004, Peter LeBray, Ph.D., a state agency consultant, reviewed the medical records to determine Thompson's mental limitations. Tr. 284-296. He found that Thompson's depression was not severe and that he had only mild restrictions in activities of daily living, social functioning, concentration, persistence, and pace. Tr. 294, 296. His opinion was confirmed by Robert Henry, Ph.D. Tr. 284.

During an examination on May 4, 2004, Dr. Greeder noted that Thompson was coughing but still smoking heavily, and had complained his low back pain and peripheral neuropathy were worsening. Tr. 300, 357. Lumbar x-rays showed straightening of normal lumbar lordosis. Tr. 304, 391. The x-rays also showed the lumbar vertebral bodies were normal in height and alignment with mild disc space narrowing at L2-3, L4-5 and no disc space at L5-SI which appeared to be congenital. *Id*. The x-rays also showed hypertrophic changes in the facets at L5-SI. *Id.* A spinal CT scan taken on July 9, 2004, showed moderate spinal stenosis at L4-5 due

---

workers). The American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. 2000).

7 - FINDINGS AND RECOMMENDATION

largely to facet hypertrophy and a left L5-SI facet spur slightly displacing the left SI nerve root, which did not appear swollen. Tr. 390.

Thompson was examined on August 23, 2004 by a physician's assistant in Kaiser Permanente's Neurosurgery Clinic for back pain and bilateral lower extremity pain. Tr. 336-39. A week before, he had been in a motor vehicle accident in which his car rolled over. Tr. 337. Thompson was given Vicodin following the accident, but he complained his pain symptoms were worsening. *Id*. Although neurologically intact, a lumbrosacral MRI was ordered due to his symptoms. *Id.* After being informed of Thompson's need for stronger pain medications, Dr. Greeder prescribed Oxycodone. Tr. 335. The MRI showed severe spinal stenosis at L4-5 due to facet ligamentum flavum hypertophy and mild posterior annulus bulging, mild posterior disc protrusion at L2-3, and endstage degenerative disc disease and suspected autofusion at L5-SI. Tr. 388. The physician's assistant discussed the MRI results with Thompson and the options of surgery and steroid injections. Tr. 321-22. Thompson was reluctant to have surgery because of his past infection, but scheduled a meeting with the neurosurgeon. Tr. 333.

On October 28, 2004, Rory E. Green. M.D., at Kaiser Permanente performed a psychiatric evaluation of Thompson. Tr. 324-27. Thompson reported that he lost his job in January 2003, separated from his wife, lost his father in January 2004, and was staying at his son's house. Tr. 324. He also reported working for 18 years as a truck dispatcher but was unable to find a job in that area. *Id*. He further stated he had a history of panic attacks, had been taking Ativan for them for 15 years, and had no alcohol for a few months since he totaled his car while drinking. *Id*. Dr. Green noted Thompson's long-standing history of depression, past alcohol abuse, pain medication use, and excessive caffeine use. Tr. 325. He diagnosed a panic disorder secondary to caffeine use; dysthymic disorder superimposed by major depressive

8 - FINDINGS AND RECOMMENDATION

disorder with moderate symptoms, rule out narcotic use as a contributing factor to affective symptoms and depression, and assigned Thompson a current GAF of 50.[3]  *Id*.  He noted that Thompson sought treatment because of a precipitating incident where he gave a friend some pain medications and the friend overdosed.  *Id*.  Dr. Green recommended decreased caffeine use, no alcohol, and antidepressant medication.  Tr. 326.

Dr. Greeder noted on November 16, 2004, that Thompson's diabetes was controlled and that a motor vehicle accident had caused a flare-up of lower back pain.  Tr. 319-21.

Hirohsa Ono, M.D., a neurosurgeon, examined Thompson on December 1, 2004 and noted increased back pain from staying in one position too long and numbness at the bottom of his feet.  Tr. 316-18.  Dr. Ono opined that Thompson's diffuse motor weakness was due to heavy smoking and was not neurological.  Tr. 317.  He further noted that the MRI and CT scans showed spinal stenosis of moderate degree in L4-L5 which was more significant on the right side, but with no laterality in Thompson's symptoms.  *Id*.  Dr. Ono diagnosed chronic pain syndrome and believed that surgical procedures may not help his current symptoms.  *Id*.  However, he ordered x-rays of the lumbar spine to determine if surgery was completely ruled out and recommended a work-up for peripheral neuropathy and nerve conduction studies.  Tr. 317-18.  He authorized Thompson to be off work for two months due to a disability based on a diagnosis of spinal stenosis and a plan for a nerve study.  Tr. 387.

Dr. Greeder wrote a letter on December 6, 2004, stating that Thompson had been his patient for 15 years and suffered from "very significant anxiety disorder, chronic rhinitis, stasis edema, and diet controlled diabetes mellitus."  Tr. 306, 312.  He noted Thompson "has an

---

[3] A GAF of 41 to 50 indicates serious symptoms (suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., few friends, unable to keep a job).  The American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. 2000).

9 - FINDINGS AND RECOMMENDATION

idiopathic, progressive, severely painful peripheral neuropathy and lumbar spinal stenosis, the latter of which has caused him to be completely and totally disabled since January 2003." *Id*. He added that these conditions were "very painful and disabling and progressive" and would "continue to worsen," rendering Thompson "totally disabled and unable to work for the remainder of his life." *Id.*

Dr. Green noted on January 18, 2005, that Thompson's depression and dysthmic disorder had not changed since his previous appointment. Tr. 310-11. Thompson said that he never started his medications, was ambivalent about them, and could not afford them. Tr. 456.

Dr. Ono examined Thompson on June 15, 2005 for persistent pain and right leg pain and recommended surgery for hypertrophy of the L5 superior facet on the right side of L4-5 space and an EMG study for diagnosis of peripheral neuropathy. Tr. 443-44. Due to Thompson's belief that he was unable to have further back surgery due to his previous infection, the Infectious Disease unit would need to clear him for surgery. Tr. 443. The Infectious Disease unit cleared Thompson for surgery on August 8, 2005. Tr. 427, 430.

An August 16, 2005 letter from Dr. Greeder noted that a CT scan on July 9, 2004, showed moderate spinal stenosis, diffuse arthritis, and a bone spur impinging on the left SI nerve root. Tr. 427. On February 1, 2006, Dr. Greeder wrote another letter stating he diagnosed Thompson with neurotic depression, diabetes, low back pain, tobacco use, lumbar spinal stenosis, and peripheral neuropathy. Tr. 399-400. He noted that Thompson's low back pain from spinal stenosis, degenerative disc disease and arthritis was "VERY disabling . . . severely limiting [Thompson's] ability to manage his ADLS, let alone work." *Id*. Although Thompson's diabetes mellitus was controlled with diet, it was "associated with his progressive peripheral neuropathy which is VERY painful and disabling." *Id*. He further noted Thompson's anxiety

10 - FINDINGS AND RECOMMENDATION

and depression were worsening and only moderately controlled with medication. *Id*. As a result, Dr. Greeder opined that Thompson should be "considered completely and totally disabled," adding that pain created difficulties with concentration and Thompson's need for frequent position changes "would prevent him from working effectively." *Id*. Dr. Greeder further opined that Thompson met Listings 1.04 for lumbar spinal stenosis, 12.04 for affective disorder, and 12.05 for anxiety disorder. *Id*. In his view, all of these conditions had been present for 15 years and slowly worsening since January 18, 2003. Tr. 399-400. He expected no improvement in Thompson's status, only more decline. Tr. 400.

On December 29, 2006, Tatsuro Ogisu, M.D., completed a neurology examination for the state agency. Tr. 473-80. He diagnosed peripheral neuropathy, idiopathic, progressive and quite diffuse with pain and dysesthesias, as well as chronic low back pain with moderate to severe lumbar spinal stenosis and facet hypertrophy at L4-L5. Tr. 476. He noted that Thompson's lower extremity symptoms were probably more related to peripheral polyneuropathy than to his spinal stenosis. *Id*. He also noted that Thompson had a tremor, obesity, diabetes mellitus controlled by diet, and a history of alcoholism. *Id*.

He found that Thompson could occasionally lift 10 pounds, should avoid frequent lifting, could stand and walk for two hours, and while sitting must periodically alternate sitting and standing to relieve pain. Tr. 477-78. He also found limitations in pushing and pulling in both upper and lower extremities and an ability to only occasionally perform other postural activities such as kneeling and crouching. Tr. 478. Dr. Ogisu also found that manipulations such as reaching, handling, fingering, and feeling should be done only occasionally due to peripheral neuropathy, poor grip, numbness, and tremor. Tr. 479. He also opined Thompson should avoid hazards, unprotected heights, and balancing. Tr. 480.

11 - FINDINGS AND RECOMMENDATION

On February 14, 2007, David Koon, M.D., completed an EMG study which was abnormal and showed electrodiagnostic evidence of sensorimotor peripheral neuropathy. Tr. 481-82.

## II.     Step Two Determination

Based on the evaluations by Drs. Cole and Green and the review by Dr. LeBray and Thompson's testimony, the ALJ found at step two that Thompson's depression and anxiety are not severe.  Tr. 37.  Thompson argues that this analysis is flawed because the ALJ misstated the opinion of Dr. Cole, failed to fully consider the opinion of his treating and examining physicians, and improperly relied solely on the evaluations by state agency physicians.

An impairment is severe if it significantly limits the claimant's ability to perform basic work activities.  20 CFR §§ 404.1521, 416.921.  Thompson bears the burden of proving that his impairments are severe.  20 CFR §§ 404.1512, 416.912; *Mayes v. Massanari,* 276 F3d 452, 459 (9th Cir 2001).

With respect to Dr. Cole's opinion, the ALJ noted his findings of only mild problems due to depression and anxiety, including mild problems in attention and concentration.  Tr. 36.  He also noted Dr. Cole's findings that Thompson had adequate persistence, pace, memory, and communication skills. was able to sustain simple routine tasks and had no problems completing a simple multi-step task.  Tr. 36-37.  All of these findings are consistent with Dr. Cole's report. Tr. 275.  To support his argument that the ALJ nonetheless misstated Dr. Cole's opinion, Thompson points to Dr. Cole's diagnoses of recurring major depression and panic disorder without agoraphobia.  Despite these diagnoses, the issue is their effect on Thompson's ability to perform work activities.  Dr. Cole not only found those effects mild, but also reported that his evaluation was not consistent with Thompson's view that he was unable to work due to these

12 - FINDINGS AND RECOMMENDATION

impairments. Tr. 276. Thompson also asserts that the GAF of 55 assigned him by Dr. Cole indicates a severe impairment. However, a GAF is reflective of current functioning and is not relevant to functioning over the 12 month time period required for an impairment. Thus, the ALJ did not misstate Dr. Cole's opinion.

Thompson contends that the ALJ's rejection of his mental impairments as severe is inconsistent with the opinions of Drs. Greeder, Neville, and Green and is improperly supported only by Dr. LeBray. An ALJ may reject the opinion of a treating physician if it is controverted by other treating or examining physicians provided that he makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart,* 278 F3d 947, 957 (9th Cir 2002) (citations omitted). The ALJ may also reject physician opinions that are brief, conclusory and inadequately supported by clinical findings. *Id.*

In giving "little weight" to Dr. Greeder's February 1, 2006 letter regarding Thompson's limitations, the ALJ correctly noted that the determination of whether Thompson was disabled is reserved for the Commissioner. Tr. 42; 20 CFR §§ 404.1527(e), 416.927(e). The ALJ also found Dr. Greeder's assessment of the severity of Thompson's depression and anxiety outside of his area of expertise as a family practitioner. Tr. 42. Social security regulations give more weight to the opinions of specialists, such as Drs. Cole and Green, than to nonspecialists, such as Dr. Greeder. *Holohan v. Massanari*, 246 F3d 1195, 1202 (9th Cir 2001); 20 CFR §§ 404.1527(d)(5), 416.927(d)(5). In this regard, the ALJ did not err.

Thompson points out that Dr. Green diagnosed Thompson with a panic and dysthymic disorder and assigned him a GAF of 50. The ALJ summarized Dr. Green's assessment as noting that Thompson "does appear to have some depression, but complicating factors would be his

13 - FINDINGS AND RECOMMENDATION

ongoing narcotic use, his concomitant use of caffeine and his history of alcohol abuse." Tr. 37. This summary is correct and does not erroneously ignore the diagnosis or GAF score. Although Dr. Green supports a diagnosis of depression and anxiety and the GAF does indicate serious symptoms, the issue is Thompson's functioning over the time period required for an impairment. As Dr. Green noted, Thompson had a long-standing history of depression and panic attacks which had not limited his ability to work and which had been exacerbated due to precipitating events, such as Thompson's job loss, separation from his wife, and a friend's overdose. Tr. 324-25. There is no indication by Dr. Green that his conditions could not be effectively treated when combined with abstinence from caffeine and alcohol.

As Thompson contends, Dr. Neville diagnosed Thompson with depression and noted his poor sleep, mediocre appetite, and loss of weight. Tr. 266. However, Dr. Neville performed a physical examination, not a psychiatric evaluation, had no records to review, and relied on Thompson's self-reporting to diagnose depression. This is insufficient to contradict the findings of mental health specialists.

The ALJ found the determination by Drs. LeBray and Henry, state agency evaluators, of only mild limitations due to depression and anxiety consistent with the opinion of Dr. Cole and the medical evidence. Tr. 37. The opinions of non-examining physicians alone does not constitute substantial evidence to reject the opinion of a treating or examining physician. *Lester v. Chater,* 81 F3d 821, 831 (9th Cir 1995). However, it may, as in this case, constitute substantial evidence when it is consistent with other evidence in the record. *Andrews* , 53 F3d at 1041; *Magallanes v. Bowen*, 881 F2d 747, 752-753 (9th Cir 1989).

The ALJ provided sufficient reasons for discounting the opinion of Dr. Greeder. He noted Dr. Cole, a specialist, opined only mild limitations due to depression and anxiety which

14 - FINDINGS AND RECOMMENDATION

was consistent with the opinions of the nonexamining physicians. The ALJ further correctly noted that Dr. Greeder's opinion was not supported by the record. Tr. 42. The ALJ provided sufficient legal reasons supported by substantial evidence in the record for his assessment of Thompson's depression and anxiety. The court must uphold the ALJ's findings, even if evidence exists to support more than one rational interpretation of the evidence. *Batson,* 359 F3d at 1193.

### III. RFC Determination

#### A. Medical Opinions

Thompson asserts the ALJ erred by failing to include manipulative limitations in his RFC. The ALJ determined that Thompson has the severe impairment of peripheral neuropathy (Tr. 35) and adopted the opinion of Dr. Jensen, a state agency nonexamining physician, that Thompson had no manipulative limitations due to the lack of complaints of such limits by Thompson in the medical record. Tr. 42.

Dr. Neville, a state agency consultant, examined Thompson in December 2003 and determined he had manipulative limits on reaching, handling, feeling, grasping and fingering secondary to decreased finger sensation, limited range of motion in the shoulders, and stack testing. Tr. 269. In May 2004, Dr. Greeder noted a worsening of Thompson's peripheral neuropathy, including pain and numbness. Tr. 300, 357. Dr. Ogisu, a neurologist, examined Thompson in December 2006 and determined that he should only occasionally reach, handle, finger, and feel due to his peripheral neuropathy, poor grip strength, and tremor. Tr. 479.

Social security regulations specify that the most weight is given to the opinions of treating physicians, followed by examining physicians, and the least amount of weight is given to nonexamining experts. *Holohan v. Massanari*, 246 F3d at 1202. To reject the uncontroverted

15 - FINDINGS AND RECOMMENDATION

opinions of Drs. Neville and Ogisu, the ALJ must provide clear and convincing reasons based on substantial evidence. *Bayliss v. Barnhart,* 427 F3d 1211, 1216 (9th Cir 2005).

The Commissioner relies on medical and psychological consultants to make findings about the nature of a claimant's impairments and the severity of the functional limitations they impose. 20 CFR §§ 404.1527(f), 416.927(f); SSR 96-6p. However, these reviewing sources do not treat or examine the claimant. The opinion of Dr. Jensen alone is insufficient to constitute substantial evidence to reject the opinions of Drs. Neville and Ogisu. *Lester v. Chater,* 81 F3d at 831. Although her opinion could constitute substantial evidence if consistent with other evidence in the record, it is not in this case. *Andrews*, 53 F3d at 1041; *Magallanes*, 881 F2d at 752-53. By not providing sufficient reasons for rejecting the manipulative limitations determined by Drs. Neville and Ogisu, the ALJ erred in this regard.

Thompson also asserts the ALJ erred by rejecting Dr. Neville's original opinion that he could sit and stand for about two hours in an eight hour day and sit for less than six hours in a day. Tr. 268. The report by Dr. Jensen, the state agency nonexamining physician, states that after making attempts to clarify Dr. Neville's opinion, she made changes to walking/standing less than six hours and sitting less than six hours. Tr. 282. In December 2006, Dr. Ogisu, the neurologist, found that Thompson could stand and walk for at least two hours and must periodically alternate sitting and standing to relieve pain or discomfort. Tr. 477-78.

The ALJ noted that Drs. Neville and Ogisu found Thompson able to work a modified range of sedentary to light exertion work activity. He gave great weight to these opinions, although he did not adopt the manipulative limitations. *Id.* at 42. These opinions on standing and sitting are consistent with those in Thompson's RFC.

### B.    Lay Witness Testimony

16 - FINDINGS AND RECOMMENDATION

Thompson asserts the ALJ improperly rejected the testimony of his wife and the written testimony of his son and daughter-in-law. Friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to the claimant's condition. *Dodrill v. Shalala*, 12 F3d 915, 918-19 (9th Cir 1993). Such testimony cannot be disregarded without providing a germane reason. *Id* at 919. Inconsistency with the medical record is a germane reason. *Bayliss,* 427 F3d at 1218.

The ALJ found the lay witness testimony to be credible except to the extent it relied on Thompson's subjective reports of pain, which he did not find credible. Tr. 41. This finding as to Thompson's lack of credibility is not contested on appeal. The ALJ also found the medical record more reliable regarding functional limitations. *Id*. Thompson's daughter-in-law wrote that Thompson watched television; fed ducks and chickens; managed his finances; shopped; made his lunch; drove his car; went to weekly meetings; complained of pain in his back, legs, and arms; got along well with others; could follow spoken instructions; and complained of pain if he sat too long. Tr. 95-103. Thompson's son wrote that this father had pain since his initial back injury and his health had declined since that time. Tr. 131. Thompson's wife testified that he walked slowly; did some dishes; picked up his things; and only occasionally cooked, did laundry, and vacuumed. Tr. 534-35. She also noted she heard him up in the night because he could not sleep and that he told her about his pain. Tr. 536-37.

Thompson does not cite any further limitations that should be in the RFC due to this testimony, and his RFC is not inconsistent with the observations by these witnesses. As noted, Thompson does not refute the ALJ's rejection of his credibility and to the extent that the lay witnesses based their statements on Thompson's reports of pain, these can be disregarded. The

17 - FINDINGS AND RECOMMENDATION

ALJ is not required to include limitations in an RFC he found neither credible nor supported by the record. *Bayliss*, 427 F3d at 1217.

## IV.     Step Four Determination

The ALJ elicited the testimony of a VE at the administrative hearing to determine if Thompson could perform his past relevant work. Past relevant work is either work as actually performed by the claimant or as generally performed in the national economy. 20 CFR §§ 404.1560 (b)(2), 416.960(b)(2). In his work history report, Thompson described his past relevant work as a truck dispatcher. Tr. 114-21. His description states he did no handling, grasping or grabbing of big objects; no reaching; and no handling of small objects. Tr. 116. The ALJ asked the VE whether an individual of Thompson's age, education, experience, and RFC could perform Thompson's past relevant work. Tr. 539. The VE testified that Thompson could perform his past relevant work as a truck dispatcher.

As discussed above, the ALJ erred by failing to include manipulative limitations in Thompson's RFC. However, this error was harmless as it was inconsequential to the disability determination. *Curry v. Sullivan*, 925 F2d 1127, 1131 (9th Cir 1990); *Burch v. Barnhart,* 400 F3d 676, 682 (9th Cir 2005). Even if these limitations were in the RFC, it would not affect the VE testimony because Thompson's past relevant work as performed did not include activities affected by the manipulative limitations. *Stout v. Comm'r of Soc. Sec. Admin.,* 454 F3d 1050,1055 (9th Cir 2006). Thus, the ALJ correctly found that Thompson could perform his past relevant work and was not disabled within the meaning of the Social Security Act.

Thompson also argues that based on his age, he should be found disabled under the Medical-Vocational Guidelines ("Grids"), 20 CFR Part 404, Subpart P, Appendix 2. For this purpose, the claimant's age is determined as of the date of the final agency decision. *Russell v.*

18 - FINDINGS AND RECOMMENDATION

*Bowen*, 856 F2d 81, 83-84 (9th Cir 1988). Thompson was age 63 at the time of the ALJ's decision which is the final decision in this case. If a claimant who is older than age 55 has a severe impairment that limits him to sedentary or light work, then he is deemed disabled under the Grids unless he has skills transferable to skilled or semiskilled work. 20 CFR §§ 404.1568(d)(4), 416.968(d)(4). Thompson contends that he is limited to unskilled sedentary work. However, the VE classified his past relevant work as skilled sedentary work. Tr. 540. Given his ability to perform his past skilled sedentary work, transferability of skills is not an issue and Thompson cannot be considered disabled under the Grids.

## RECOMMENDATION

For the reasons set forth above, the Commissioner's final decision should be affirmed, and a judgment should be entered dismissing this case.

///

///

///

///

///

///

///

///

///

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a United States District Judge. Objections, if any, are due October 18, 2010. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 29th day of September, 2010.

                s/ Janice M. Stewart_____
                Janice M. Stewart
                United States Magistrate Judge